In re Harry TUCCI, Debtor.

BOYERTOWN DATA SYSTEMS, INC., Plaintiff,

v.

Harry TUCCI, Defendant.

Bankruptcy No. 85–02591 T.
Adv. No. 86–0866.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 7, 1988.

Edward J. DiDonato, Ciardi, Fishbone, & DiDonato, Philadelphia, Pa., for debtor.

Christopher K. Walters, Reed, Smith, Shaw & McClay, Philadelphia, Pa., for plaintiff.

MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Presently pending before this Court is the Rule 12(b)(6) motion of debtor-defend-

ant Harry F. Tucci ("debtor") to dismiss a complaint filed by creditor Boyertown Data Systems, Inc. ("plaintiff"). Plaintiff's complaint requests that we revoke debtor's discharge because debtor did not provide this Court with a set of stipulated facts on a pending 11 U.S.C. § 362 motion. Since plaintiff has not shown a failure to respond to a material order of court, as outlined in 11 U.S.C. § 727(a)(6)(C), I will grant debtor's motion to dismiss.[1]

The procedural history of this case is not in dispute. In 1983, prior to the filing of the instant bankruptcy, plaintiff initiated a civil action against debtor in the United States District Court for the Eastern District of Pennsylvania. The complaint alleged that debtor, a former officer of plaintiff, had committed fraud and defalcation while acting in a fiduciary capacity. On June 24, 1985, after the District Court trial and the filing of post-trial materials, but before the issuance of a decision, debtor filed the instant chapter 7 petition. Plaintiff was listed as a creditor[2] on debtor's Schedule A-3. Following standard operating procedures, our clerk's office sent notice to all creditors, fixing February 3, 1986 as the last date for filing complaints objecting to discharge.

On July 22, 1985, plaintiff filed a motion requesting relief from the automatic stay to allow the District Court matter to proceed. Debtor then filed a motion to dismiss the motion, and the hearing was continued. During this period of time the parties arranged a conference call to discuss this matter with me in a less formal setting. I suggested that they provide a set of stipulated facts, and the parties apparently commenced the process of preparing such a stipulation. Plaintiff prepared a draft stipulation and forwarded it to debtor in early October, 1985. The parties then embarked on an exchange of correspondence concerning the proposed draft stipu-

lation. Plaintiff claims that it forwarded a revised draft of the stipulation to debtor on November 3, 1985. Hearing no response from debtor, plaintiff finally inquired about the acceptability of the stipulation on April 10, 1986. *See* Plaintiff's Memorandum in Opposition to Debtor's Motion to Dismiss ("Plaintiff's Brief"), p. 6.

Meanwhile, the clock was ticking and the main case progressing to discharge. The creditors' (11 U.S.C. § 341) meeting was held on December 3, 1985, and on December 30, 1985 the Interim Trustee filed a report recommending discharge. At the creditors' meeting, the trustee provided notice that the discharge hearing would be held on March 13, 1986.

At no point in this process did plaintiff exercise its rights under 11 U.S.C. § 727 or § 523 to object to debtor's discharge or to the dischargeability of its debt. On March 13, 1986, after a discharge hearing during which no one appeared to object, I signed the debtor's discharge order.

On August 6, 1986, plaintiff filed the instant complaint requesting revocation of the discharge. The debtor has filed a motion to dismiss, based on plaintiff's alleged failure to state a claim. I have reviewed the transcript and the briefs, and render the following opinion.

Although this matter is in an unusual procedural posture, it is conceptually simple. Plaintiff claims that under § 727(e)(2) it has filed a timely complaint to revoke the discharge, and that debtor's motion to dismiss should be denied since plaintiff can prove a set of facts sufficient to support its claim. I have no quarrel with plaintiff's argument that this complaint to revoke the discharge was timely filed. The discharge order was entered on March 13, 1986, and the complaint was filed on August 16, 1986, well within the one year limit prescribed by § 727(e)(2).[3]

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

2. Plaintiff is listed in care of its counsel, and the address listed for counsel on schedule A-3 is the same address that appears on plaintiff's plead-

ings in the instant complaint. Plaintiff does not dispute that it received all notices in this case.

3. The text of § 727(e)(2) reads as follows:
   (e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—

Determining whether debtor's motion to dismiss should be granted requires initial review of the appropriate standard to be applied.[4] As I have previously noted:

> (A) Rule 12(b)(6) motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief, taking the allegations of the complaint as true, viewing them liberally, and giving the plaintiff the benefit of all inferences which fairly may be drawn therefrom. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir.1977); *Murray v. City of Milford*, 380 F.2d 468, 470 (2d Cir.1967); *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Hospital Building Co. v. Trustees of Rex College*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

*Fidelity Electric Company, Inc. v. Wemmco, Inc. (In re Fidelity Electric Co.)*, 43 B.R. 385, 387 (Bankr.E.D.Pa.1984). This interpretation is consistent with the Supreme Court's holding in *Warth v. Sel-*

*din*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). *See Trina Dee Inc. v. Township of Plainfield (In re Trina Dee)*, 18 B.R. 330, 332, 6 C.B.C.2d 853, 855 (Bankr.E.D.Pa.1982).

Plaintiff asserts that it has pled a proper set of facts entitling it to relief. Specifically, plaintiff focuses on § 727(a)(6)(C), which, when read in conjunction with § 727(d)(3),[5] allows a court to revoke a discharge when the debtor has refused, "... on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify; ..." 11 U.S.C. § 727(a)(6)(C).

Plaintiff has found this "failure to respond" in the fact that debtor (1) failed to respond to the § 362 motion and (2) was not highly cooperative in drafting the factual stipulation. Plaintiff's Brief, pp. 8–9. The parties have cited no relevant case law,[6] and I have found none, on the specific question of whether a failure to answer a § 362 motion[7] constitutes a failure to "re-

---

**4.** Plaintiff has tangentially raised the issue of whether this matter should be treated as a motion for summary judgment. Notes of Testimony, February 24, 1987 ("N.T.") at 17–17a. The Federal Rules of Civil Procedure provide:

> ... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b), incorporated in the Bankruptcy Rules at B.Rule 7012(b). After a careful review of the instant pleadings we have decided that the matters with which we have been presented fall within the pleadings, and thus we need not treat this as a motion for summary judgment. We note that plaintiff has not pressed its suggestion that this be treated as and

> (1) under subsection (d)(1) of this section within one year after such discharge is granted; or
> (2) under subsection (d)(2) or (d)(3) of this section before the later of—
> (A) one year after the granting of such discharge; and
> (B) the date the case is closed.

11 U.S.C. § 727(e)(2).

decided under the summary judgment rule. *See* plaintiff's brief, p. 7 (suggesting that the appropriate benchmark to use is the Rule 12(b)(6) motion to dismiss).

**5.** Section 727(d)(3) reads:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
>
> \*  \*  \*  \*  \*  \*
>
> (3) the debtor committed an act specified in subsection (a)(6) of this section.

11 U.S.C. § 727(d)(3).

**6.** Debtor quotes a footnote tracing the legislative history of § 727 in a recent decision. *In re Thomas J. Connelly*, 59 B.R. 421, 429 n. 11 (Bankr.N.D.Ill.1986). *Connelly*, replete with table of contents, is a 32 page tome covering the right to assert the privilege against self-incrimination in a bankruptcy setting. We agree with plaintiff that *Connelly* is of no value in our analysis. This is not a Fifth Amendment issue. Further, the legislative history quoted by debtor provides no substance for debtor's argument.

**7.** We disagree with plaintiff's bald assertion that debtor has failed to respond to its § 362 motion. Debtor responded with a motion to dismiss. Because we have decided this point on other grounds, we need not reach the issue of whether

spond" to a "material question" under § 727(a)(6)(C). The rather obvious reason for this lack of precedent is that comparing a failure to respond to a *creditor's* motion and a failure to respond to a material question approved by the *court* is like comparing apples to oranges. By no stretch of the imagination or the law can the two be read as mutually inclusive.

■ The second argument proffered by plaintiff is that debtor's failure to cooperate in the preparation of a stipulation, as discussed in a conference call between the parties and the Court, is a failure to respond to a material question approved by the Court. Plaintiff has offered no case law authority in support of its argument. We disagree with debtor's response that the cases interpreting § 727(a)(6) have been "... exclusively limited to the issues (sic) where a Debtor, while in court during *oral examination*, failed or refused to answer a question after directed to do so by the Court." Debtor's Brief in Support of its Motion to Dismiss ("Debtor's Brief") at 6 (emphasis added). *See e.g., In re Flowers,* 55 B.R. 661, 662 (Bankr.M.D.Ala.1985) (Debtor failed to appear at discharge hearing despite *written* order that he do so).

On a literal level, there was really no "order" that debtor Tucci disobeyed. I have developed a process by which counsel can request that I participate in a conference call with the interested parties on any given matter. I use the conference call technique when the parties feel that my participation in the call will facilitate settlement negotiations or otherwise ease the progress of a case. For example, I often use conference calls to arrange the scheduling of complex matters, to determine whether all or a portion of a case can be submitted on stipulations, or to ascertain the status of a matter. Given the fact that this division of this district stretches from the New York border on the north, east to the New Jersey border, and down to the Maryland border on the south, the confer-

ence call has proven an effective method of resolving minor problems that might otherwise force counsel to travel great distances to argue in court. The savings in counsel fees and court time are obvious. When a matter is seriously disputed, or of major significance, I require that the parties appear in court to argue. I have never forced participation in one of these conferences, and the resolutions and accommodations that are reached during these calls are of an informal nature. When requested by the parties, and assuming all necessary notice, I have signed orders or consent motions memorializing the terms of a conference call discussion. But when I recommend actions to the parties, I view my actions as simple recommendations. I have never intended that these discussions and concomitant suggestions be the equivalent of signed orders. Thus, other than situations in which I sign orders, my role during these conferences is to move the matter in dispute toward settlement or trial.

Neither plaintiff nor debtor in the instant case requested that I sign an order requiring submission of a stipulation. Either side was free to make that request. Frankly, I find it disturbing that *both* sides waited as long as they did to pursue the finalization of the stipulation. If I had entered an order requiring submission of a stipulation, it would have been incumbent on both parties to take the necessary steps to see that the stipulation was prepared, because a failure to meet the deadline would have been a violation on the part of *both* parties.

■ Plaintiff also argues that debtor's failure to respond was a "material" violation under § 727 because, had the debtor responded and the § 362 motion been decided in plaintiff's favor, the District Court would have been free to rule on the issue of dischargeability. *See* Plaintiff's Brief, p. 9. Assuming, arguendo, that the stay had been lifted, the District Court would

---

a motion to dismiss, allowed under the rules of adversary pleading, *see* B.Rule 7012, incorporating Fed.R.Civ.P. 12, is a sufficient response when we have ordered an answer to a motion. *See* B.Rule 9014 and Local Bankruptcy Rule

9014.1. Even if it is not an appropriate "answer," it is clearly some type of a response. Plaintiff was content with this "response" from debtor prior to the time that the discharge order was issued.

indeed have been able to issue a decision. However, such a decision on the District Court civil fraud complaint would not necessarily have been res judicata or have collaterally estopped us from reaching an independent decision on the issue of dischargeability. *See e.g., Wilmington Trust Company v. Behr (In re Behr)*, 42 B.R. 922, 927 (Bankr.E.D.Pa.1984) (and cases cited therein). If the District Court could not have determined dischargeability,[8] the only way that the issue might have come to our attention was through a complaint pursuant to 11 U.S.C. § 523 or § 727. No such filings are of record, which, of course, is why the case is pending in its present posture. Thus, even using plaintiff's own standard, debtor's failure to respond was not "material."

■ Plaintiff has suggested that we might exercise our equitable powers to determine that the failure to cooperate in preparation of the stipulation constituted a failure to answer a material question. Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases through B.Rule 9024, provides:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; ... (6) any other reason justifying relief from the operation of the judgment ...

Fed.R.Civ.P. 60(b). Interpreting this provision, a bankruptcy court has required that a party seeking relief under Rule 60(b) must show "... 'extraordinary' circumstances ..." which prevented relief through usual channels. *In re Eccleston*, 70 B.R. 210, 213 (Bankr.N.D.N.Y.1986), *citing Ackermann v. United States*, 340 U.S. 193, 202, 71 S.Ct. 209, 213, 95 L.Ed. 207 (1950). In *Eccleston*, a creditor moved to vacate an order of discharge for the sole purpose of effectuating a reaffirmation agreement. The court failed to find any extraordinary circumstances, noting that:

"(d)ebtors failure to apply for approval of the reaffirmation agreement prior to his discharge remains a mystery. Had the final details of such an agreement remained unresolved at the time of his discharge, Debtor's failure to move for an extension of time under Fed.R.Bankr. P. 4004(c) is unexplained. Additionally, the Court notes the five months transpiring between Debtor's discharge and the Bank's first attempt at revocation ... These factors weigh against the Court's exercise of its equitable powers at present.

*Id.* at 213. I feel compelled to emphasize the obvious similarities between the facts of *Eccleston* and the present case.

A second font of equitable powers is found in § 105 of the Code:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Section 105 has been employed to revoke a discharge when a debtor has failed to obey a lawful order of court. *In re Flowers*, 55 B.R. 661, 662 (Bankr.M.D.Ala.1985) (court revoked discharge after debtor failed to attend show cause hearing scheduled as a result of his failure to attend discharge hearing). The *Flowers* court probed to find a reason for the debtor's actions, explaining "(i)f the debtor's actions were not willful and she had good cause for failing

---

**8.** *See* note 9, *infra*.

to attend her discharge hearing, she could have taken steps to protect her discharge." *Id.* at 662.

In determining whether any extraordinary circumstances or excusable failure should prompt exercise of our equitable powers, I pause to consider the significance of the discharge. The schema of the Code is a careful tradeoff between the rights of creditors and debtors, leading to the discharge of certain debts. The discharge becomes the springboard from which a debtor acquires a fresh start. But the rights and protections embodied in the Code are not a self-propelling system. The Code provides the vehicle for protecting certain interests. Whether a creditor (or a debtor) chooses to avail itself of the procedural safeguards enumerated in the Code is a matter of individual choice and strategy.

Since the issuance of a discharge is the result of such a carefully crafted process, revoking a discharge is a serious step. This is not a situation in which we must apply a specific standard to determine whether plaintiff's actions (or failure to act) were excusable. *Cf.* Bankr.Rule 8002(c) (extension request "... may be granted upon a showing of excusable neglect ..."). I agree with the *Eccleston* court that the party seeking to revoke the discharge must make some extraordinary showing. To accept any lesser standard would encourage disgruntled creditors to attack otherwise valid discharges. The resulting uncertainty would stymie the credit world and severely circumscribe the "fresh start" created by the drafters of the Code. A lesser standard would also encourage a laxity in legal practice inconsistent with the finely honed protections offered in the Code.

During the February 24, 1987 hearing in the instant case, I tried to determine why plaintiff failed to take advantage of the protections afforded under 11 U.S.C. § 523 or § 727. Counsel responded that his client believed that the § 362 motion was sufficient to protect its rights. N.T., February 24, 1987 ("N.T.") at 9. I also asked why plaintiff didn't appear at the discharge hearing to request that the case not be discharged. Counsel responded that this failure to appear was an oversight on the part of counsel. N.T. at 10. Compounding these tactical errors, plaintiff never requested that we hold another conference call or reschedule the final § 362 hearing to force debtor into a more cooperative stance on the stipulation. Again, plaintiff waited. This case is in its present posture because plaintiff was not vigilant in protecting its rights. Under the circumstances, we will not exercise our equitable powers.

I sense an undertone of discontent in plaintiff's brief, flowing from plaintiff's belief that debtor had lulled it into a sense of complacency by holding the draft stipulation for so long. There is no doubt that debtor's counsel could easily have reminded the Court or the clerk's office of the pendency of the automatic stay motion prior to the discharge hearing. Instead, they waited mutely until the discharge had been issued. Although I find this conduct less than neighborly, the Code does not require that counsel for debtor act to protect the rights of every creditor.[9] Those duties fall upon counsel for the various creditors. In this case, plaintiff's counsel failed to make certain choices, which failure enabled debtor to obtain his discharge. Neither side is completely blameless, but the obligation to act fell upon plaintiff, who must accept the consequences of its inaction.

Under the circumstances, plaintiff can prove no set of facts in support of its claim, and I must grant debtor's motion to dismiss. An appropriate order will follow.

---

**9.** Plaintiff herein should have filed a timely complaint pursuant to § 523 and/or § 727. In choosing to pursue merely a lifting of the automatic stay of § 362 (in order to proceed with the District Court fraud action), plaintiff *may* have considered a judgment in its favor in the District Court as equivalent to a judgment that its debt was deemed non-dischargeable in this court. Of course, such a result could not follow unless the District Court had withdrawn the reference and had consolidated the record of the fraud action with a timely § 523 and/or § 727 action. In fact, the District Court declined to withdraw the reference for any purpose.