**In the Matter of FEDERATED DEPART-MENT STORES, INC. and Allied Stores Corporation, et al., Debtors.**

**The RESOLUTION TRUST CORPORATION, et al., Appellants,**

v.

**ALLIED STORES CORPORATION, Appellee.**

**No. 1–90–130.**
**Civ. A. No. C–1–91–441.**

United States District Court, S.D. Ohio, E.D.

Nov. 20, 1991.

Jonathan D. Forstot, Joel B. Harris, and David C. Miller, New York City, for appellant.

David G. Heiman, Cleveland, Ohio, atty. for appellees.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to an appeal of the Opinion and Order dated May 31, 1991, from the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court") by United States Bankruptcy Judge J. Vincent Aug, Jr. The matter is appealed by the Resolution Trust Corporation as Conservator for Columbia Savings & Loan Association and on behalf of CSL Investments (the "RTC/CSL Investments"), the Resolution Trust Corporation as Receiver for FarWest Savings & Loan Association and as Conservator for FarWest Savings Association, F.A. (the "RTC FarWest") and certain other preferred shareholders represented by the law firm of Kirkpatrick & Lockhart (the "Allied Preferred Shareholders Group") (collectively the "Appellants" or the "Preferred Shareholders"). The underlying Opinion and Order granted a motion (the "Motion") by Allied Stores Corporation requesting the Court to extinguish the Preferred Shareholders' right to vote their shares and elect two directors to Allied's Board of Directors. Also before the Court is a Motion to Dismiss the Appeal, filed by Appellee. The Court will address each of these issues *seriatim.*

### FACTS

On January 15, 1990, Allied Stores Corporation and sixty-six of its affiliates filed voluntary petitions for relief under Chapter 11 of the Federal Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). On March 28, 1991, Allied filed a Motion for Order Authorizing Amendment of Preferred Shares Rights Certificates. Essentially, the motion requested the Bankruptcy Court to issue an order eliminating the prospective voting rights affiliated with Allied's $3.3125 Cumulative Exchangeable Preferred Stock, Series A.

These Preferred Shares provided that if in the event Allied failed to pay dividends for six consecutive quarters, the Preferred Shareholders were to automatically have the right to elect two directors to Allied's Board of Directors. It is not refuted that the corporation did not pay a dividend for five consecutive quarters and on June 15, 1991, it would mark the sixth consecutive

quarter, thereby activating the voting right.[1] Prior to the June 15 dividend deadline, Allied filed a motion with the United States Bankruptcy Court for the Southern District of Ohio, Western Division, requesting an order of that Court authorizing Allied to amend the Preferred Shares Rights Certificate to eliminate the voting proviso.

The Appellants vehemently opposed any such order. The Appellants urged the Bankruptcy Court to deny the motion, or in the alternative, to order the appointment of an official committee of Preferred Shareholders in Allied's Chapter 11 case.

The Bankruptcy Court convened a hearing on the motion on May 7, 1991. All parties were present at the hearing and were given an opportunity to argue their respective positions. On May 31, 1991, the Bankruptcy Court issued an Opinion and Order granting the motion of Allied authorizing them to amend the Preferred Shareholders' Shares Rights Certificate so as to eliminate all prospective voting rights associated with the Preferred Shares. The Opinion was filed in the afternoon of May 31, 1991, a Friday. The Certificate was amended the following Monday morning, June 3, 1991, at 9:50 a.m. The Appellants did not and, quite evidently, could not file for a stay of execution of the Bankruptcy Court's decision. Instead, the Appellants appealed the decision to this Court.

### LAW AND ANALYSIS

Appellants allege five separate errors on the part of the Bankruptcy Court, which are described by this Court as follows:

(1) Misapplication of § 105(a) of the Bankruptcy Code;

(2) A misapplication of § 303 of the Delaware General Corporation Law;

(3) Taking action absent a finding of "clear abuse" on the part of the Preferred Shareholders;

(4) Taking action despite "Unclean hands" on the part of Debtor Allied Stores Corporation; and

(5) Failing to recognize that rights and interest cannot be abridged without adequate compensation. (See Appellants' Joint Brief in Support of Appeal, p. 3–4.)

Each of these five issues raised by Appellant will be addressed below *seriatim.*

### STANDARD OF REVIEW

■ This Court adopts the Standard of Review as found in *In re Caldwell* 851 F.2d 852 (6th Cir.1988) which articulated that, "[A]n appellate court reviews a bankruptcy court's decision to determine whether its factual findings are clearly erroneous and its legal conclusions, which are subject to *de novo* review on appeal, are correct."

### I. *Misapplication of § 105(a) of the Bankruptcy Code*

■ 11 U.S.C. § 105(a) provides:
The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this Title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

The United States Supreme Court considered generally the equitable authority of the Bankruptcy Court in *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). In the unanimous decision of those Justices participating in the opinion of the Court, it was held that, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Id.* at 206, 108 S.Ct. at 968.

In its application of *Ahlers,* the United States Court of Appeals for the Sixth Circuit has more precisely defined the parameters regarding the use of equity in the Bankruptcy Courts.

---

1. Allied, however, does assert that the automatic stay provided for by section 362 of the Bankruptcy Code may preclude the attachment of new rights to a debtor's capital stock during the pendency of a Chapter 11 case.

In all matters, this Circuit has held that those equitable principles in the possession of the Bankruptcy Court cannot fly in the face of the unambiguous language of the applicable statutes. *In re C–L Cartage Co., Inc.*, 899 F.2d 1490, 1494 (6th Cir. 1990).

In specifically addressing the application of Section 105(a), the Circuit Court determined in *In re Granger Garage, Inc.*, 921 F.2d 74 (6th Cir.1990) that:

> [E]quitable powers may only be exercised within the confines of the Bankruptcy Code.... A bankruptcy court does not have unfettered equity powers.... A bankruptcy court cannot extend its subject matter jurisdiction under the guise of acting "equitably." Because congress did not grant the bankruptcy court subject matter jurisdiction, the equitable powers of the bankruptcy court can not be used to impose the order either.... Indeed, even if the court had the power, such an indemnification order would have been inequitable, not equitable [in the instant matter]....

Most recently, the Circuit Court addressed the equity powers of Section 105 in *Childress v. Middleton Arms (In re Middleton Arms)*, 934 F.2d 723, 725 (6th Cir. 1991) where they found that, "the equitable powers of section 105(a) may only be used in furtherance of the goals of the Bankruptcy Code."

In looking to the instant matter, this Court finds general agreement with Appellants assertion that the Bankruptcy Courts do not have unlimited equitable powers. Indeed, the statute and applicable precedents are quite clear that the Bankruptcy Court's equitable powers do not extend beyond those provisions of the Title which governs the operation of that court.

However, within these established confines, the Bankruptcy Court has wide authority to utilize its power in equity. In *In re A.H. Robins Co.*, 828 F.2d 1023, 1026 (4th Cir.1987), *cert. denied*, 485 U.S. 969,

108 S.Ct. 1246, 99 L.Ed.2d 444 (1988), the Fourth Circuit held the use of equity by the Bankruptcy Court to be appropriate in those instances where, "irreparable harm (will come) to the bankruptcy estate if the injunction does not issue." Indeed, in *A.H. Robins* the harm was determined to simply be a possible burden placed on Robins' officers, directors, and employees, which the Court found would exhaust their energies and interfere with the reorganization should an injunction not issue. The likely disruption in the instant matter should the Bankruptcy Court not have taken its actions below would be far more serious and damaging.

■ Though Appellants repeatedly point to a lack of reference by the Bankruptcy Court in its ruling below to unambiguous authority in other sections of the Title to be used as a vehicle by which to apply Section 105(a), this Court concurs with the ruling in *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989). In addressing the issue of equity, the Seventh Circuit wrote, "[t]here is a basic difference between filling a gap left by Congress' silence and rewriting the rules that Congress has affirmatively and specifically enacted." [2] *Id.* at 1197. Accordingly, this Court cannot agree with Appellants that the lack of a specific reference in the Bankruptcy Code must preclude equitable authority in the Bankruptcy Court providing, of course, that the action does not fly in the face of unambiguous language in Title 11.

■ The legislative history of Section 105 indicates that the limitations on the equitable powers of the Bankruptcy Court were expanded so that they no longer were reserved solely to the District Court. Instead, Congress recognized that the increased powers and jurisdictions of the new Bankruptcy Court required that the Bankruptcy Judge be permitted equitable powers in fulfilling his substantive duties to protect the estate, creditors, and debtors in a bankruptcy action. See *End Notes of*

---

**2.** Citing *Mobil Oil Corp. v. Higginbottom,* 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978).

*Committee on the Judiciary, S.Rep. No. 989,* 95th Cong., 1st Sess. (1977).

The Court in *In re American Hardwoods, Inc.,* 885 F.2d 621 (9th Cir.1989), supports this interpretation of Section 105(a) and found that, "section 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate." *Id.* at 625.

■ The Bankruptcy Court in its Opinion and Order of May 31, 1991, acted in amending the Rights Certificate to prevent the potential tax liability of some $234 million to the Bankruptcy Estate. This action, clearly in the best interest of the Bankruptcy Estate, Debtor-in-possession, and Creditors, falls within this substantive general mandate of the Bankruptcy Court and its long recognized function under the law. Indeed, to find otherwise would be to reject the entire purpose of the bankruptcy process.

The application by the Bankruptcy Court of 11 U.S.C. § 105 is not contrary to law.

## II. *Application of Section 303 of Delaware Corporation Law*

■ Delaware General Corporation Law, 8 Del.C. § 303 (1953) provides in pertinent part:

(a) Any corporation of this State, a plan of reorganization of which, pursuant to any applicable statute of the United States relating to reorganizations of corporations, has been or shall be confirmed by the decree or order of a court of competent jurisdiction, may put into effect and carry out the plan and the decrees and orders of the court or judge relative thereto and may take any proceeding and do any act provided in the plan or directed by such decrees and orders without further action by its directors or stockholders. Such power and authority may be exercised, and such proceedings and acts may be taken, as may be directed by such decrees or orders ..., by designated officers of the corporation ..., with like effect as if exercised and taken by unanimous action

of the directors and stockholders of the corporation.

(b) Such corporation may, in the manner provided in subsection (a) of this section, but without limiting the generality or effect of the foregoing ..., amend its certificate of incorporation, and make any change in its capital or capital stock, or any other amendment, change, or alteration of provision, authorized by this chapter ...

The plain language of the Delaware statute clearly contemplates the restructuring of shareholder voting rights in circumstances such as found in the instant matter. This provision of the governing state law is not inconsistent with the general thrust of the Bankruptcy Code which exists to provide the opportunity to restructure obligations allowing the Debtor to continue as a viable and productive entity.

In conducting the review of the instant matter, this Court contemplates with great weight the anticipation of Preferred Shareholders to elect two members of the Allied Board pursuant to the Rights Certificate. However, like the Bankruptcy Court below, this Court recognizes that the Preferred Shareholders' participation will not be precluded in the process leading to the confirmation of the Plan of Reorganization.

Further, this Court takes note that fiduciary requirements incumbent upon any member of the Allied Board of Directors would preclude them from protecting solely the interest of the Preferred Shareholders to the exclusion of others.

■ Appellants correctly argue that the rights of the Preferred Shareholders and the obligations of the Appellee under the Rights Certificate are contractual. Bankruptcy, by its very nature, provides the Debtor the opportunity to alter rights and obligations established pre-petition. In *In re Coal–X Ltd., "76",* 103 B.R. 276 (D.Utah 1986), the Court articulated this position quite well in stating:

The parties cannot apply and consider state law alone without regard to the overriding concerns and fairness considerations involved in a bankruptcy situation. Indeed, once a bankruptcy proceed-

ing has been instituted and the lessee becomes a debtor in bankruptcy, a whole new set of laws is brought into play which can substantially affect parties' relationships and interests, often altering or restricting their rights and obligations.

*Id.* at 280.

Were this Court to adopt the position of Appellants, the Bankruptcy Court would be unable to fulfill its function in not only this, but a vast number of cases. The ability to alter obligations goes to the basis of the bankruptcy system in this country. To eliminate this principle in the Bankruptcy Court would unduly restrict and restrain the Judges there.

Appellants rely heavily upon the position articulated by the Bankruptcy Court in *In re Amatex Corp.*, 97 B.R. 220 (Bankr. E.D.Pa.1989) which rejected Debtor's request based solely upon Section 105(a). While the Bankruptcy Court in *Amatex* did indeed decline to exercise its equitable powers, it did so only after taking notice that the requested remedy flew "directly in the face of very basic tenets of Pennsylvania insurance law." *Id.* at 226. In the instant matter, the controlling state law very clearly allows the requested relief from the Bankruptcy Court. As a result, the Court finds *Amatex* to be sufficiently distinquished to not be controlling in the instant matter.

The considerations above were highlighted by the Bankruptcy Court in explaining its rationale in taking its course of action which attempted to avoid the potential two hundred thirty four million dollar tax liability and the breakup of the FSI Empire.

■ Appellants further argue that application of Section 303 is precluded given the requirement that a Plan of Organization "has or shall be confirmed." This Court is in agreement with the Bankruptcy Court and its interpretation of *In re Acequia, Inc.*, 787 F.2d 1352 (9th Cir.1986), in rejecting such a narrow application. The schedule as set forth at the commencement of the bankruptcy proceedings has been consistently met by the Debtor–in–Possession and there is every expectation that the Plan will be confirmed in the near future. At this point in time, there is no indication from the Bankruptcy Court that there are any meritorious obstacles that may derail confirmation of the Plan. Were the Court to find agreement with the position of Appellants, the only logical—and undesirable—choice would be to await the confirmation of the Plan in the Bankruptcy Court before taking up the instant appeal.

Accordingly, this Court finds that the Bankruptcy Court's conclusions are not contrary to law.

### III.   *Clear Abuse*

Appellants further assert that the Bankruptcy Court erred due to a lack of finding of clear abuse on the part of the Preferred Shareholders. In support of their assertion, Appellants cite numerous cases in which the issue of clear abuse has arisen. (See Appellants' Joint Brief in Support of Appeal, p. 20–22.) Yet, a careful reading of those cases reveal that none rely upon the application of Section 303. Indeed, the general theme of these cases goes to the rights of the shareholders which vested prior to the petition in bankruptcy providing a distinct contrast from the instant matter.

■ The record below is clear: the Bankruptcy Court's ruling was based upon a desire to preserve the assets of the bankruptcy in the interest of all parties. Although this Court believes that although there is a strong preponderance toward the free exercise by shareholders of all available rights, that right is not absolute. *See generally Saxon Industries., Inc. v. NKFW Partners*, 488 A.2d 1298 (Del.1984). There must necessarily be "an appropriate balance ... between the Bankruptcy Code and (Delaware) General Corporation Law." *Id.* at 1302. Though not specifically addressing this issue below, it can not be more clear that the Bankruptcy Court's decision strove to develop the appropriate balance.

These pre-petition rights guaranteed in the Rights Certificate were contingent upon a course of action that could only occur post petition. It is incumbent upon

the Bankruptcy Court to analyze each individual issue with an overwhelming consideration of the whole. The Courts have consistently held that the abrogation of unexercised shareholder rights during reorganization proceedings can be an appropriate action on the part of the Bankruptcy Court. See generally *In re Johns–Manville Corp.*, 52 B.R. 879 (Bankr. S.D.N.Y.1985).

Should Appellants' positions be adopted the Bankruptcy Court would effectively be precluded from meeting its obligations and responsibilities.

Accordingly, there is no indication that the Bankruptcy Court's decision below regarding this issue was contrary to law.

### IV. *The Clean Hands Issue*

Appellants assert that the course of action pursued by Allied prior to the petition have created the circumstances leading to this appeal. Indeed, Appellant's singular recitation of the facts alleges that Allied's decisions were individually and collectively calculated to produce the circumstance requiring the Bankruptcy Court's actions below. In conducting this review, the Court is unpersuaded as to Appellants' position.

This Court remains committed to its long held position that the Bankruptcy Judge is best suited to make the most accurate assessment of such facts and allegations. Judge Aug is an experienced jurist and this Court finds no clear error in his Findings of Fact or Conclusions of Law regarding the instant issue.

Accordingly, Appellant's position cannot prevail here.

### V. *Adequate Compensation*

■ Appellants contend that in depriving the Preferred Shareholders of the ability to place two members onto the Allied Board of Directors, the Bankruptcy Court erred by not concurrently providing adequate compensation.

Appellants' argument are wholly without legal merit. Section 303 expressly contemplates the abrogation of shareholder rights in connection with a Chapter 11 reorganization. The Court must conclude that the Delaware legislature's declination to include "compensation" eliminates any *requirement* of the Bankruptcy Court to assure it. Further, bankruptcy by its very nature provides that all obligations need not be met to their fullest. To assume otherwise would require the return to "debtor's prisons" to assure that all obligations are fully satisfied. Though some may hold this concept desirable, this Court does not.

■ Accordingly, this Court declines to rule as to the potential value, if any, of shareholders' voting rights nor their entitlement to protection. However, should such a right exist, it need be litigated and proven in the Bankruptcy Court, which is the appropriate forum. There is certainly adequate legal authority for the Bankruptcy Court to draw its conclusion in an informed manner. The Bankruptcy Court is clearly in the best position to determine any factual issues.

As this Court has stated many times in the past, the Bankruptcy Judges in the Southern District of Ohio are jurists of significant abilities and a failure to utilize that dedicated and knowledgeable Court would abuse scarce judicial resources.

While neither concurring nor disagreeing with the Bankruptcy Court's Decision in this issue, this Court finds nothing to indicate that Judge Aug ruled contrary to law.

### CONCLUSION

This Court, being well informed and duly advised, and upon a review of all pertinent law and the Record on Appeal, finds Appellants' positions not well taken. Accordingly, the Appellant's Motions on Appeal are hereby DENIED.

Appellee's Motion to Dismiss, therefore, is rendered MOOT.

IT IS SO ORDERED.