**In re AMATEX CORPORATION, Debtor.**

**AMATEX CORPORATION, Plaintiff,**

**v.**

**AETNA CASUALTY & SURETY CO., Stonewall Insurance Co. and Interstate Fire & Casualty Co., Defendants.**

Bankruptcy No. 82–05220S.
Adv. No. 89–0544S.

United States District Court,
E.D. Pennsylvania.

Oct. 30, 1989.

---

William H. Bradbury, III, Norristown, Pa., J. Gregg Miller, Philadelphia, Pa., for debtor.

Robert C. Corbin, Philadelphia, Pa., for Stonewall Ins. Co.

Leonard P. Goldberger, Philadelphia, Pa., for Aetna Cas. & Sur. Co.

Mitchell S. Pinsley, Philadelphia, Pa., for Interstate Fire & Cas. Co.

Pace Reich, Philadelphia, Pa., for Creditors' Committee.

## ORDER

GILES, District Judge.

AND NOW, this 30th day of October, 1989, upon consideration of the Report and Recommendations of Bankruptcy Judge dated October 10, 1989, in reference to the resolution of the above-entitled proceeding, it is hereby ORDERED AND DECREED as follows:

1. The aforesaid Report and Recommendations are ADOPTED by this court.

2. Judgment is entered in favor of the Debtor and Plaintiff, AMATEX CORPORATION, and against the remaining Defendant, STONEWALL INSURANCE CO. (hereinafter "Stonewall"), in part.

3. It is hereby declared that the Complaint presents a justiciable controversy and that the rights of the Plaintiff against Stonewall under the policy in issue are as follows:

a. The filings of proofs of claims by claimants are the equivalent of their filing lawsuits against the Debtor giving rise to a duty of Stonewall to indemnity the Debtor for claims paid plus the Debtor's costs of defending such claims;

b. The "triple trigger theory" is applicable to personal injury claims. Therefore, "bodily injury" occurs continuously from exposure to manifestation. However, property damages are triggered only upon discovery of the asbestos-containing materials at or on the property; and

c. Stonewall is entitled to withhold the "self-insured retention" sum of $25,000 recited in the policy.

## REPORT AND RECOMMENDATIONS OF BANKRUPTCY JUDGE

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant adversarial proceeding represents a second and more modest attempt of the Debtor, formerly a manufacturer of products containing asbestos, to resolve the issue of the payments due to it from its liability insurers, in order that it can formulate a Plan of Reorganization. The first attempt, in which the Debtor urged this court to exercise its powers under 11 U.S.C. § 105(a) to compel the insurers to cash out the full amount of their policies, failed in this court and the district court. *In re Amatex Corp.*, 97 B.R. 220 (Bankr.E.D.Pa.1989), *aff'd sub nom. Amatex Corp. v. Stonewall Insurance Co.*, 102 B.R. 411 (E.D.Pa.1989) (hereinafter referred to as "*Amatex I*").[1] The instant proceeding, which merely seeks a declaration of the extent of the insurers' liability, has already spawned settlements from all but one of the smaller insurers, named (perhaps appropriately) Stonewall Insurance Co. (hereinafter "Stonewall").

We conclude that the Debtor is entitled to much of the relief which it seeks from

---

1. Although the district court's decision has been appealed to the Third Circuit Court of Appeals, we note that the Court of Appeals has recently held, consistent with the decisions in *Amatex I*, that the general equitable powers of a bankruptcy court under § 105(a) must be "applied in a manner consistent with the Code." *In re Morristown & E. R.R.*, 885 F.2d 98, 100 (3d Cir.1989).

Stonewall. In particular, we conclude that the complaint in this proceeding presents a justiciable controversy which this court may resolve; that the filings of proofs of claims by claimants are the equivalent of their filing suits against the Debtor, giving rise to a duty of Stonewall to indemnify the Debtor for claims paid plus the cost of defending claims filed against the Debtor; and that, while mere exposure to products containing asbestos creates liability for asbestos-related personal injury claims, an external manifestation of damages from asbestos is necessary to trigger property-damage claims. We also hold that Stonewall is entitled to withhold the "self-insured retention" sum of $25,000 recited in the policy, rather than being obliged, as the Debtor urged, to pay over this amount and then file a claim for it.

## B. PROCEDURAL AND FACTUAL BACKGROUND

A detailed review of the procedural history of this case through March 10, 1989, the date of that Opinion, is set forth in *Amatex I*, 97 B.R., at 221–23, and will not be repeated here. Thereafter, the following developments occurred in the main case. On March 22, 1989, the date of the hearing on the Disclosure Statement accompanying the Debtor's Second Amended Plan, the Debtor advised us that the preparation and filing of a Third Amended Plan and Disclosure Statement would be necessary. We directed, per an Order of March 23, 1989, that these filings must be made on or before June 16, 1989; that a hearing on the Third Amended Disclosure Statement would be conducted on July 19, 1989; and that no further continuances would be granted. These filings were in fact made on June 16, 1989, but the Debtor also filed an "Emergency Motion" on that date requesting that the hearing on the Third Amended Disclosure Statement be again continued. We agreed to continue the hearing until October 4, 1989. On October 4, 1989, the Health Claimants' Committee, which had been silent since the Disclosure Statement was filed in June, 1989, orally expressed some allegedly minor concerns. With reluctance, due to the seemingly end-less procession of this case, we agreed to put off this hearing again until October 25, 1989, with the caveat, introduced by the United States Trustee, that an examiner would be appointed if the Plan were not confirmed by February, 1990.

As we noted in *Amatex I*, 97 B.R. at 222, the Debtor had liability insurance policies which apparently covered its asbestos-related liability in place with five (5) insurers, American Universal Insurance Co. (hereinafter "American"), Aetna Casualty and Surety Co. (hereinafter "Aetna"), Interstate Fire and Casualty Co. (hereinafter "Interstate"), Bellefonte Insurance Co. (hereinafter "Bellefonte"), and Stonewall. On May 16, 1989, we approved a settlement which American made with the Debtor as a result of the filing of a lawsuit against it by the Debtor similar to and shortly before the proceedings considered in *Amatex I*. On August 14, 1989, after consideration of the Debtor's Motion to Establish an Escrow Account and after notice and a hearing and Certification of No Objection, we amended our May 16, 1989 Order. In this settlement, American agreed to pay to a trust account on behalf of the Debtor on the date that the Order approving the settlement becomes a final order, the sum of $1,292,-405.00, representing the remaining limits under the American policy, and the sum of $400,000.00 toward costs of defense of asbestos claims. American also agreed to irrevocably assign to the Debtor all of its rights, title and interest in and to any and all other rights, other than any right to reinsurance, it may have against any person or entity relating in any way to its policy. Pursuant to the settlement, the Debtor agreed to assume the American policy as an executory contract, and the Debtor and American agreed to provide each other with mutual releases.

On June 16, 1989, the Debtor commenced this adversary proceeding by filing a declaratory judgment action against Aetna, Interstate, and Stonewall. The Complaint alleged that a settlement had also been reached with Bellefonte. Counsel for the Debtor provided this court with a draft of the Bellefonte settlement, but we decline to

set forth its terms in detail because they remain subject to modification. Generally, the settlement requires Bellefonte to purchase an annuity policy and pay the proceeds thereof in installments to the Debtor's estate.

The Debtor's multi-count Complaint in the instant proceeding sought the following declaratory relief:

Count 1—that the insurers had a duty to indemnify the Debtor for claims for personal injury where any part of the "injury process from exposure" occurred during the policy period.

Count 2—that the insurers have a duty to defend pre-petition lawsuits and post-petition proofs of claim alleging personal injury and a declaration that the policy first activated is the policy to which the duty to defend attaches and continues until the policy limits are exhausted.

Count 3—that the Debtor, since it is not an insurer, is not required to contribute to the payments of any losses to claimants under the policies "other insurance" clauses.[2]

Count 4—that the insurers have a duty to indemnify the Debtor for claims for property damage where any part of the "property damage process" occurred during the policy period.

Count 5—that the insurers should pay for the administration and trial of objections to proofs of claim filed against the Debtor and the cost of administering an "alternative claims resolution" system which the Debtor proposes to establish through its Chapter 11 plan.

Count 6—that the "retained limit" provision in the policies with Aetna and Interstate and the "self-insured retention provisions" contained in the Stonewall policy represent unsecured claims against the Debtor's estate.

The Adversary Complaint was originally scheduled for trial on August 2, 1989. However, on July 21, 1989, the Defendants filed a joint Motion to Dismiss the Complaint. On July 26, 1989, we entered an Order that the Defendants were obliged to file any Briefs in support of their Motion and that the Debtor file its response and Brief thereto by August 1, 1989, and directing that trial scheduled for August 2, 1989, must go forward.

The parties did file Briefs as directed and trial commenced on August 2, 1989. Due to the paucity of pleadings, however, we were compelled to continue the trial for completion on August 17, 1989. The Defendants were also ordered to file Answers to the Plaintiff's Complaint on or before August 15, 1989. However, prior to August 17, 1989, the parties reported that the matter was settled between the Debtor and all the Defendants with the exception of Stonewall.

Although this court has not been provided copies of the Debtor's settlements with Aetna or Interstate, it is reported by Debtor's counsel that the Debtor's settlement with Interstate is similar to that with Bellefonte discussed at pages 859–60 *supra*. Debtor's counsel also reports that under the proposed terms of the Aetna settlement, Aetna is to pay to the Debtor's Plan on behalf of all bodily-injury claims the sum of $500,000 within thirty (30) days of confirmation; $1 million one year later; and $1.5 million two years later. Aetna is also to pay the sum of $240,000 to the Plan on behalf of property-damage claims.

After a colloquy with counsel in court that day, we entered an Order of August 17, 1989, providing that the Debtor would file a motion to assume the insurance contracts which would be heard on September 6, 1989;[3] the record would be completed by

---

**2.** The Debtor has made no reference to this claim in the course of the proceeding. We cover this issue in what we believe is appropriate fashion in our discussion of the policy's self-incurred retention provision. See the description of Count 6 *infra;* and page 872 *infra.*

**3.** This motion was in fact timely filed and granted on September 6, 1989, eliminating from the arsenal of the insurers in defending this proceeding the issue of whether the Debtor was required to assume the insurance contracts in issue. Since the duties of the Debtor under the policies were minimal at the time of the filing of this case and at all times thereafter, we doubt whether the policies were executory contracts under the definition provided in *Sharon Steel*

the taking of the deposition of an additional witness on August 31, 1989; and Supplemental Briefs would be filed by the parties on or before September 8, 1989 (the Debtor), and September 15, 1989 (Stonewall).

■ The only matters added through the record made on August 17, 1989, and the deposition of August 31, 1989, was the Debtor's attempt to show, through a case study of 600 of the 9,315 pending lawsuits against the Debtor analyzed in the Tillinghast report, *see Amatex I,* 97 B.R. at 222, that the present claims potentially covered by the Stonewall policy would easily exhaust the $1 million maximum coverage limit of that policy. We find, on the basis of this record, that this fact has been proven.

In its Supplemental Brief, at 2, the Debtor stated that the purpose of the instant declaratory judgment action is to "obtain a declaration of its rights under [the insurance] policies to defense and indemnification in the context and under the terms of its proposed Third Amended Plan of Reorganization." For the purposes of its Third Amended Disclosure Statement, the Debtor contends, it must provide a concrete explanation of its rights under the insurance policies which it desires this court to determine. It further states that it needs clarification of not only its rights to payment of claims but also its rights to defense and handling of claims. *Id.* at 4. The Debtor acknowledges that this Court cannot alter the terms of the Stonewall policy, but asks that we interpret and declare the meaning of those terms in the context of the "changed environment" of its Third Amended Plan of Reorganization.

The issues before the Court as presented in the Complaint and the parties' Briefs appear to be as follows: (1) Whether the Debtor's declaratory judgment action presents a justiciable case or controversy which this bankruptcy court may determine; (2) What triggers coverage under the Stonewall policy in the case of both personal injury and property claims; (3) Whether the filing of a proof of claim gives rise to liability for indemnification and to defend under the Stonewall policy; (4) Whether the Debtor is required to exhaust all limits on underlying insurance policies before any liability may be imposed upon its Stonewall policy; and (5) Whether the retained limit and self-insured retention provisions represent unsecured claims against the Debtor.[4] Each of these issues will be addressed *in seriatim* hereinafter at pages 862–72 *infra*.

The facts relevant to the Debtor's coverage and the provisions of the policies generally are recited in *Amatex I,* 97 B.R. at 222–23. The Stonewall policy, it will be recalled, provided excess coverage in the maximum amount of $1 million for one year, 1976–77. The clause of the policy which is most significant to the disputes at hand is the initial paragraph describing general coverages, which provides as follows:

## UMBRELLA LIABILITY INSURANCE

The Company agrees with the Insured, named in the schedule made a part hereof, in consideration of the payment of the premiums and in reliance upon the statements and in the schedule and subject to the limits of liability, exclusions, conditions and other terms of this policy:

> COVERAGES: To indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages and

*Co. v. National Fuel Gas Distribution Corp.,* 872 F.2d 36, 39 (3d Cir.1989) (contract must be so far unperformed by either party thereto that the failure to complete performance would constitute a material breach excusing the performance of the other party).

**4.** The insurers advised that they are not pressing an original contention that the particular claimants against the policies were indispensable parties to this proceeding. Also, the issue of the insureds' responsibility to finance the cost of its "alternative dispute resolution" appears moot because, even without Stonewall's paying any of that cost, its liability will exceed the policy limits.

expenses, all as included in the definition of "ultimate net loss," because of:

(A) personal injury, as hereinafter defined;

(B) property damage, as hereinafter defined;

(C) advertising liability, as hereinafter defined.

The general problem facing the Debtor was obtaining the cooperation of the insurers in effecting the terms of the Debtor's Third Amended Plan of Reorganization (hereinafter "the Plan"). The Plan proposes to establish two trust funds: the Asbestos Disease Claims (hereinafter "AD") Trust Fund and the Asbestos Property Claims (hereinafter "AP") Trust Fund. Under the Plan, the AP Trust Fund and the AD Trust Fund would assume all of the Debtor's present and future liability for asbestos-related claims. The Debtor would be discharged from all present asbestos claims, and future claimants would be required to seek recovery from the Trust Funds and not from the Debtor directly. Individuals alleging personal injury from exposure to the Debtor's products would be limited to recovery from funds contained in the AD Trust Fund. Similarly, individuals alleging property damage from the installation of the Debtor's materials at or on their property would be required to seek recovery only from the funds contained in the AP Trust Fund.

The Plan also would establish a "Claims Resolution Facility" to process claims against the Debtor through mediation and arbitration. Any claimant may, however, look to a court for the final disposition of any claim. The Trust Funds would be funded by a payment by the Debtor of $4.4 million, representing the Debtor's going-concern value. The Debtor would also make quarterly payments to the Trust Funds in the amount of $1.340 million until the year 2010. The proceeds of the Debtor's insurance policies, $9.436 million, would also be contributed to the Trust Funds along with an assignment of all rights the Debtor may have against any other entity arising out of any of the claims. The Debtor anticipates that personal injury claimants will be paid approximately 15 cents for each claim-dollar under the Plan.

## C. THE BANKRUPTCY COURT IS EMPOWERED TO MAKE RECOMMENDATIONS ON WHICH THE DISTRICT COURT MAY ENTER A DECLARATORY JUDGMENT IN THIS ADVERSARY PROCEEDING

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a) (hereinafter "Declaratory Judgment Act"), grants the federal courts broad authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Under the Declaratory Judgment Act, however, a federal court may only grant declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). This limitation has generally been held to prevent federal courts from considering hypothetical controversies. *See, e.g., UNR Industries v. American Mutual Liability Ins. Co.*, 92 B.R. 319, 327 (N.D.Ill.1988) (hereinafter cited as *"UNR"*).

By virtue of 28 U.S.C. § 151, the bankruptcy court is an adjunct of the district court, which, obviously, is a court of the United States. Thus, under the Declaratory Judgment Act, the bankruptcy court has the power to issue declaratory judgments. *See generally* 9 COLLIER ON BANKRUPTCY, § 7001.12, at 7001–27 (15th ed. 1989). Bankruptcy Rule (hereinafter "B. Rule") 7001(9) states that a declaratory judgment action with respect to the types of relief delineated in B. Rules 7001(1) to (8) is a type of adversary proceeding that a bankruptcy court may entertain. B. Rule 7001(7) provides that a bankruptcy court may hear an adversary proceeding initiated to obtain equitable relief such as that requested by the Debtor herein. Pursuant to the Declaratory Judgment Act and the B. Rules, assuming that this proceeding presents a justiciable controversy, this court is therefore empowered to enter a declaratory judgment in this matter.

However, whether this bankruptcy court can enter a declaratory judgment on its own or merely submit proposed findings of fact and conclusions of law to the district court which alone may enter a final order depends upon whether the adversary proceeding is a core or a non-core proceeding under 28 U.S.C. 157(b). The Debtor has pleaded, pursuant to B. Rule 7008(a), that this is a non-core, related proceeding. Stonewall, in its Answer, simply denies that we have jurisdiction. While we believe that this court has jurisdiction to hear this proceeding, we are compelled, see 28 U.S.C. § 157(b)(3), to determine that this proceeding is indeed non-core. *See In re A.I.A. Industries, Inc.,* 75 B.R. 1013, 1016–20 (Bankr.E.D.Pa.1987) (similarly complex claim of debtor against an insurer is non-core). The pleadings can hardly be construed as an express consent by either party that we finally determine it. *See* B. Rule 7012(b).[5] We therefore are compelled to submit recommendations of what the decision in this proceeding should be to the district court in the form set forth in B. Rule 9033 pursuant to 28 U.S.C. § 157(c)(1).

## D. THE DEBTOR'S DECLARATORY JUDGMENT ACTION PRESENTS A JUSTICIABLE CASE OR CONTROVERSY

Stonewall maintains that the Debtor's Complaint fails to present a justiciable controversy which may be heard and determined by either this court or, presumably, the district court as well. However, we note that courts have often been called upon to determine the extent of insurance coverage in other contexts. In *Keene Corp. v. Insurance Co. of N. America,* 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) (hereinafter cited as *"Keene"*), the plaintiff, a manufacturer of thermal insulation containing asbestos, sought a declaratory judgment of its rights and obligations vis-a-vis its insurer under comprehensive general liability policies with respect to litigation involving its liability for personal injury claims due to asbestos-related diseases. The insurer argued that the plaintiff's declaratory judgment action did not present a "case or controversy" and that the plaintiff could raise coverage issues only in the context of a particular case in which the insurer refused to defend or indemnify the plaintiff. *Id.* at 1034.

The Court of Appeals for the District of Columbia (hereinafter the "D.C. Court") disagreed with the insurer and held that the declaratory judgment action brought by the plaintiff did not present a hypothetical question, since the plaintiff

has been, and will continue to be, sued for injuries that result from the use of its asbestos products. For each of these suits—past, present, and future—the rights and obligations of Keene and its insurers must be resolved. There can be no question that the interpretation of the contracts at issue in this case presents a "real and substantial controversy" that can be specifically resolved by a decision in this case.

*Id.* at 1040.

The D.C. Court relied upon the United States Supreme Court's ruling in *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (hereinafter cited as *"Aetna"*), to articulate the standard for determining whether an issue presents a justiciable case or controversy. It is held therein that, for an issue to present a justiciable case or controversy, the dispute "must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Keene,* 667 F.2d at 1040, quoting *Aetna,* 300 U.S. at 241, 57 S.Ct. at 464. The United States Supreme Court expounded on this standard in *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (hereinafter cited as *"Maryland Casualty"*), where it stated that

---

5. Somewhat ironic is the observation that, without any objection from the parties or the district court on appeal, we proceeded to enter a final order in *Amatex I.* However, neither the parties, we, nor the district court discussed the core/non-core issue in that decision.

the question [of justiciability] in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

The Court of Appeals for the Third Circuit (hereinafter the "Third Circuit"), in *AC & S, Inc. v. Aetna Casualty & Surety Co.*, 764 F.2d 968 (3d Cir.1985) (hereinafter cited as "*AC & S II*"), had no difficulty in deciding that the interpretation of the terms of insurance policies raised in a context very similar to that presented here was a justiciable issue. In an earlier decision in the *AC & S* case reported below at 500 F.Supp. 511 (1980), the United States District Court for the Eastern District of Pennsylvania (hereinafter the "District Court") ruled that the insulation installer/plaintiff's complaint against an insurer for a declaratory judgment regarding a policy's coverage generally was not justiciable. However, the Third Circuit, in a decision reported as *AC & S, Inc. v. Aetna Casualty & Surety Co.*, 666 F.2d 819 (3d Cir.1981) (hereinafter cited as "*AC & S I*"), reversed the District Court's ruling and held that the plaintiff's declaratory judgment action was justiciable. The plaintiff, among other things, installed industrial and commercial asbestos containing insulation, and was named as a co-defendant in at least 800 lawsuits seeking to recover damages for exposure to asbestos. The plaintiff had comprehensive liability insurance from Aetna and from Travelers Indemnity and Insurance Company (hereinafter "Travelers"). Aetna refused to defend any of the lawsuits and Travelers refused to defend any of the lawsuits or to make any payments under its policy. The plaintiff brought a multiple count action against Aetna and Travelers seeking, *inter alia*, a declaration of its and the insurers' obligations to defend the lawsuits and to pay any resultant judgments. *Id.* at 820–22.

The District Court found that the plaintiff's declaratory judgment action was not justiciable on the ground that there was no concrete dispute before it, since individual parties and facts were not before the court.

Therefore, it dismissed the complaint and cross-claims. The Third Circuit reversed and, relying upon *Aetna, supra;* and *Maryland Casualty, supra,* found that the dispute between the plaintiff and the insurers as to the coverage of the insurance policies was real and concrete and, therefore, justiciable. The Third Circuit found unpersuasive the District Court's reasoning that the issues were not justiciable because they were raised independently from specific underlying damage claims. The Third Circuit thus stated, in *AC & S I,* 666 F.2d at 822–23, that

[t]he factors that will determine the relative duties and benefits under the insurance contracts are independent of the underlying claims and are being presented in an adversarial context by parties with adverse interests [citation omitted]. Declaratory suits to determine the scope of insurance coverage have often been brought independently of the underlying claims albeit the exact sums to which the insurer may be liable to indemnify depend on the outcome of the underlying suits. *See Crowley's Milk Co. v. American Mutual Liability Insurance Co.,* 426 F.2d 752 (2d Cir.1970); *Sears, Roebuck & Co. v. Zurich Insurance Co.,* 422 F.2d 587, 590 (7th Cir.1970); *St. Paul Fire & Marine Insurance Co. v. Aetna Casualty & Surety Co.,* 357 F.2d 315 (10th Cir.1966); *Federal Insurance Co. v. Michigan Mutual Liability Insurance Co.,* 277 F.2d 442 (3d Cir.1960); and *Bituminous Insurance Cos. v. Pennsylvania Manufacturers' Association Insurance Co.,* 427 F.Supp. 539 (E.D.Pa.1976). Moreover, that the adjudication will not result in any immediate payment of damages by the litigants here is not determinative.

*See also Riehl v. Travelers Insurance Co.,* 772 F.2d 19 (3d Cir.1985) (action to determine the liability for the expenses and the clean-up of a toxic dump site is justiciable even though no funds were expended and no judgment of liability for costs of cleanup was entered); R. ANDERSON, COUCH ON INSURANCE, § 74:135, at 641 (2d Ed. 1983) (it is not a prerequisite to the right to

declaratory relief that there be a pending action against the insured); and R. LONG, THE LAW OF LIABILITY INSURANCE, § 26.01–.04, at 26.2 to 26.13 (1966) (includes an excellent discussion of the justiciability of declaratory judgment actions relating to insurance policies and coverage thereunder).

Stonewall cites to *UNR, supra,* to support its contention that the Debtor's instant declaratory judgment action is not justiciable. *UNR* involved a complaint filed in an adversary proceeding by an asbestos manufacturer seeking indemnification or contribution for various asbestos claims. However, unlike in this proceeding, the complaint in *UNR* sought to impose liability against the insurer based on a tort theory rather than on a construction-of-insurance-contract theory. The court in *UNR,* 92 B.R. at 327, distinguished *AC & S I, supra;* and *Keene, supra,* stating that, unlike the indemnification and contribution theories advanced in *UNR,*

> [t]he construction of those insurance terms did not have to await the outcome of the underlying cases because the answer to the coverage issue depended upon the basis of the claims, not the insured's ultimate liability.

Further, the asbestos manufacturer in *UNR,* unlike the Debtor here, had not alleged that the insurance company had any obligation to defend. As we will discuss later in this Opinion, while the duty to indemnify may not arise until ultimate liability has been determined, the duty to defend arises, as in the Stonewall policy, when a lawsuit, claim, or other action is filed that may submit the insurer to liability.

As in *Keene, supra,* the Debtor herein is, and will continue to be, sued for injuries that result from the use of its products which contained asbestos. As stated earlier, 9,315 lawsuits are currently pending against the Debtor and countless other lawsuits against it are doubtless halted by the automatic stay imposed by § 362(a) of the Bankruptcy Code. For each of these suits, the rights and obligations of the Debtor and Stonewall may need to be determined before the Debtor's Plan can be confirmed.

This court, being bound to follow the *AC & S* decisions and believing that the facts here are closer to those presented in *AC & S* than those presented in *UNR,* finds that the interpretation of the coverage under the Stonewall policy presents a real and substantial controversy that this court may determine.

That this matter presents a real and substantial controversy between the Debtor and Stonewall is also evidenced by the strong adversarial positions adopted by the parties with respect to the interpretation of the insurance policies. Stonewall's vigorous defense to this matter and the ultimate settlement of the claims against them by the other insurers in response to the two adversary proceedings instituted by the Debtor belie Stonewall's contention that the dispute between the parties is purely hypothetical.

## E. THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THE STONEWALL POLICY ARE NOT ALTERED BY THE DEBTOR'S CHAPTER 11 REORGANIZATION CASE

█ The main difference between the Debtor and the plaintiffs in the *AC & S* and *Keene* cases is that the Debtor is in the midst of a bankruptcy case and the plaintiffs in those cases were not. The Stonewall policy does not expressly discuss the impact of a bankruptcy filing by the Debtor on the coverage provided thereunder. The Stonewall policy does contain the following provision deeming it to be amended to conform to state statutes: "Terms of Policy Conformed to Statute: Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes." Pennsylvania insurance law requires that indemnity policies provide that "the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy...." 40 P.S. § 117. It is therefore clear, under Pennsylvania law, that the rights and obligations of the Debtor and Stonewall under the

Stonewall policy are not altered because of the Debtor's Chapter 11 filing.

F. EXPOSURE, EXPOSURE–IN–RESIDENCE, AND/OR MANIFESTATION TRIGGER LIABILITY FOR THE PERSONAL INJURIES OF DISEASED ASBESTOS CLAIMANTS; BUT ONLY MANIFESTATION TRIGGERS LIABILITY FOR PROPERTY DAMAGES OF ASBESTOS CLAIMANTS UNDER THE STONEWALL POLICY

■ The Debtor seeks, first, a declaratory judgment of Stonewall's duty to defend personal injury and death claims brought by the Asbestos Claimants. The Debtor also seeks a declaratory judgment that Stonewall has a duty to indemnify the Debtor for personal injury claims where any part of the injury process from exposure to asbestos occurred during the policy period. The issue here is to determine what event must occur during the policy period to trigger Stonewall's duty to defend and indemnify under its policy.

In interpreting the terms of the Stonewall policy, we are mindful of the fact that, under Pennsylvania law, insurance policies must be strictly construed against insurers. The district court in *McCorkle v. Firemen's Insurance Co. of Newark, N.J.*, 678 F.Supp. 562, 563 (W.D.Pa.1988), summarized the law in Pennsylvania in this area as follows:

> In Pennsylvania, a court's duty is to determine the parties' intent as manifested in the language of the insurance contract. *Eastern Associated Coal v. Aetna Casualty & Surety Co.*, 632 F.2d 1068 (3d Cir.1980). Generally, the policy should be read as a whole. *Delaware Construction Co. v. Safeguard Insurance Co.*, [209 Pa.Super. 502] 228 A.2d 15 (Pa.Super.1967). "Where the language of the policy is clear and unambiguous it cannot be construed to mean otherwise that [sic] what it says." *D'Allessandro v. Durham Life Insurance Co.*, [503 Pa. 33] 467 A.2d 1303 (Pa.1983). However, the court should not torture the language of the policy in order to

create ambiguities; ambiguities should be avoided, if possible. *Eastern*, 632 F.2d at 1075. If the policy language is found to be ambiguous, the provisions must be resolved in favor of the insured. *St. Paul Fire & Marine Insurance Co. v. U.S. Fire Insurance Co.*, 655 F.2d 521, 524 (3d Cir.1981).

*See also AC and S II, supra*, 764 F.2d at 973.

Pennsylvania law provides that not only must insurance policies be construed in favor of the insured, but also that policies must be construed "in a manner more favorable to coverage." *Houghton v. American Guaranty Life Insurance Co.*, 692 F.2d 289, 291 (3d Cir.1982). *See also Lac D'Amiante du Quebec, Ltee. v. American Home Assurance Co.*, 613 F.Supp. 1549, 1557 (D.N.J.1985) ("ambiguities, such as the failure to define the method by which coverage is triggered, are, in accordance with applicable law, construed in favor of the insured"); and *In re Leedy Mortgage Co.*, 76 B.R. 440, 446 (Bankr.E.D.Pa.1987) (all ambiguities in an insurance policy must be construed against the insurer).

Stonewall's duty to indemnify and defend is defined by its policy. In addition to the general coverage clause quoted at page 861 *supra*, several other provisions of the Stonewall policy must be considered by this Court. These provide in pertinent part as follows:

> DEFINITIONS: B. Personal Injury. The term "personal injury" shall mean bodily injury, sickness or disease, including death at any time resulting therefrom,....
>
> E. Ultimate Net Loss. The term "ultimate net loss" shall mean the total sum which the Insured, or any company as his insurer, or both, become legally obligated to pay as damages, because of personal injury, property damages, or advertising liability, either through adjudication or compromise, and shall include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest on judgments, expenses for doctors, lawyers, nurses and investigators and other

persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Named Insured's or of any underlying insurer's permanent employees. [Stonewall] shall not be liable for any expenses as aforesaid when payment of such expenses is included in other valid and collectible insurance.

With respect to its duties to indemnify the Debtor for damages paid to asbestos health claimants, the determination of liability turns on the definition of the term "personal injury" as set forth in the Stonewall policy. Three divergent legal theories have evolved in interpreting the terms "personal injury" and "bodily injury" in the context of asbestos-related diseases. For our purposes herein, these two terms shall be treated as interchangeable. The three theories are known as (1) the Exposure Theory; (2) the Exposure–in–Residence Theory; and (3) the Manifestation Theory. Under the Exposure Theory, mere exposure to asbestos is determined to be sufficient to trigger coverage because "bodily injury" arises from exposure. *See Porter v. American Optical Corp.*, 641 F.2d 1128 (5th Cir.1980), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); and *Insurance Co. of N. America v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980), *clarified*, 657 F.2d 814 (6th Cir.), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981).

Under the Manifestation Theory, manifestation of the disease during the policy period is the sole trigger to coverage because it is reasoned that the disease is not manifested until it is diagnosable. Under this theory, "bodily injury" means the manifestation of a diagnosable disease. *See Eagle–Picher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682 F.2d 12 (1st Cir.1982), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983).

Under the Exposure–in–Residence Theory, it has been held that, since asbestos-related diseases are progressive, bodily injury occurs during the latency period of the disease continuously from exposure to manifestation. Coverage is triggered by a claim that a victim was either exposed to asbestos products, suffered exposure-in-residence, or manifested an asbestos-related disease during the policy period. *See Lac D'Amiante, supra*, 613 F.Supp. at 1555.

The Pennsylvania Supreme Court has not ruled on the issue of which theory is applicable in asbestos health cases decided, like the instant claims, under the law of Pennsylvania. However, the Third Circuit concluded, in *AC and S II*, 764 F.2d at 972–73, that the Exposure, Exposure-in-Residence and Manifestation Theories *all* constitute bodily injury. In predicting how the Pennsylvania Supreme Court would rule on this issue, the Third Circuit relied upon the Pennsylvania Superior Court's opinion in *Vale Chemical Co. v. Hartford Accident & Indemnity Co.*, 340 Pa.Super. 510, 490 A.2d 896 (1985), *vacated on other grounds*, 512 Pa. 290, 516 A.2d 684 (1986) (hereinafter cited as *"Vale"*). The court in *Vale*, applying *Keene, supra*, reasoned that "in the context of a disease with a long latency period such as asbestos-related diseases, the terms 'bodily injury,' 'sickness' and 'disease,' standing alone, simply lack the precision necessary to identify a point in the development of the disease at which coverage is triggered." 340 Pa.Super. at 520–21, 490 A.2d at 901. Thus, the courts in both *AC & S II, supra;* and *Keene, supra*, adopted an all encompassing definition for "bodily injury" which includes the Exposure, Exposure–in–Residence, and Manifestation Theories. "Bodily injury" means, therefore, according to these courts, "any part of the single injurious process that asbestos-related diseases entail." *AC & S II, supra*, 764 F.2d at 972. *See also Techalloy Co. v. Reliance Insurance Co.*, 338 Pa.Super. 1, 7–12, 487 A.2d 820, 825–26 (1984).

Lacking any language distinguishing that in the Stonewall policy from that in the policy considered in *AC & S II*, we are bound by the Third Circuit's ruling in *AC & S II*, and the Debtor, therefore, is entitled to a declaratory judgment that the Exposure, Exposure–in–Residence, and Manifestation Theories (hereinafter the "Triple

Trigger Theory") all trigger Stonewall's duty to indemnify the Debtor for asbestos health claims under the Stonewall policy.

■ Having determined that the Triple Trigger Theory is applicable to personal injury claims under the Stonewall policy, we now must determine if a similar Triple Trigger Theory is applicable to claims for asbestos-related property damage. With respect to property damage, the Stonewall policy provides, in addition to the general coverage and "ultimate net loss" provisions respectively quoted at pages 861 and 866 –867 *supra*, as follows:

C. Property Damage.

The term "property damage" shall mean physical injury to, or destruction of tangible property, including the loss of use thereof.

In adopting the Triple Trigger Theory for property-damage claims arising from asbestos products, the New Jersey District Court suggested that it would be illogical and impractical to provide a triple trigger in bodily injury cases but only a single trigger in property damage cases. *Lac D'Amiante, supra,* 613 F.Supp. at 1560. In that case, the court, interpreting New Jersey law and noting that there have been no decisions of any court there that have addressed the issue of the trigger of coverage for asbestos-related property damage claims, held that, with respect to property damage, coverage is triggered during the entire period from installation of the asbestos in the building until the time that it is removed or contained. The court acknowledged, however, that property damage, unlike asbestos related bodily injury, is not an insidious disease and that therefore there may be reason to treat the two differently.

The issue for this Court to determine is whether property damage is confined to a discrete act, such as installation or discovery of the asbestos containing materials, or whether the damage is continuous because the asbestos materials break down due to the movement of air and vibrations in the building containing the asbestos materials. *See generally* U.S. Dept. of Justice, Land and Natural Resources Dept., THE ATTORNEY GENERAL'S ASBESTOS LIABILITY REPORT TO THE CONGRESS 46–47 (September 21, 1981). In other words, what is the damage to property that triggers coverage under the Stonewall policy?

Stonewall suggests that this Court adopt a "discovery rule" with respect to Stonewall's liability to indemnify for property damages rather than the "continuous rule" suggested by the Debtor, *i.e.,* that liability is triggered continuously from installation to discovery. Under a "discovery rule," discovery of damage caused by the asbestos-containing materials must be made during the policy period for liability to be triggered under an indemnity policy such as the Stonewall policy. In support of the discovery rule, Stonewall cites to *Pittsburgh Corning Corp. v. Travelers Indemnity Co.,* C.A. No. 84–3985, 1988 WL 5291 (E.D.Pa. January 28, 1988) (1988 US Dist LEXIS 680) in which The Honorable James T. Giles (hereinafter "Judge Giles") of our district court ruled that the property-damage-liability coverage provided in a primary-liability insurance policy is triggered at the time of discovery and not continuously from the date of installation through removal or containment. In that case, a manufacturer of pipe insulation which contained asbestos moved for a declaratory judgment regarding the issue of when coverage was triggered with respect to property damage under its general comprehensive indemnity insurance. *Id.* In rejecting the "continuous rule" approach for concealed property damage claims, Judge Giles cited to *Metal Bank of America, Inc. v. Liberty Mutual Insurance Co.,* 14 PHILA.CO. RPTR. 71 (Phila. Co. C.P.1986), and stated as follows:

Pittsburgh Corning argues that the reasoning of *AC & S* applies to constant progressive property damage as well. I do not agree. While a "continuous trigger" theory may be used in order to remedy physical injury or disease caused by asbestos in the past, injury to property does not occur until it is discovered and the market value of the property drops. Therefore, a continuous trigger approach is inappropriate.

1988 U.S. Dist. LEXIS at 686.

We observe that, coincidentally, Judge Giles has been the district court judge to

whom all of the matters in this case requiring district court review have been assigned. Hence, we are herein preparing a Report and Recommendation in a matter in which Judge Giles must enter the final decision or order. We believe it to be quite likely that Judge Giles would follow his own decision in *Pittsburgh Corning* irrespective of our recommendation to the contrary. While we are not bound by the *Pittsburgh Corning* decision in the same sense that we are bound by the Third Circuit's decision in *AC & S II, supra, see In re Bergman, Norfolk & W.R.R. v. Bergman,* 103 B.R. 660, 668–69 (Bankr.E.D.Pa. 1989), this set of circumstances does influence our inclination to follow *Pittsburgh Corning.* We also believe, however, that the reasoning of *Pittsburgh Corning* is sound and we adopt it as our own.

Injury to person and injury to property are infinitely different. Exposure to asbestos causes grievous bodily injury long before any diagnosable disease is manifested. Injury to property, however, is evidenced only by a decline in property value. Until the asbestos is discovered, the value of the property is not decreased by the presence of the asbestos. *See, e.g., Deodato v. Hartford Insurance Co.,* 143 N.J.Super. 396, 363 A.2d 361 (Law Div.1976), *aff'd,* 154 N.J.Super. 263, 381 A.2d 354 (App.Div. 1977) (where a roof was negligently constructed during the policy period, the trigger of liability was the destruction of the roof years later). This Court thus follows the result in *Pittsburgh Corning* and recommends that, with respect to property damage, the "discovery rule" is appropriate. Therefore, Stonewall's liability to the Debtor for property damages under its policy is triggered only by the discovery of the products containing asbestos on or at the property during the policy periods.

## G. THE FILING OF A PROOF OF CLAIM IN THE DEBTOR'S BANKRUPTCY GIVES RISE TO A DUTY OF STONEWALL TO DEFEND UNDER THE POLICY

■ The specific rules of Pennsylvania law with respect to determination of a duty of an insurer to defend an insured are as follows:

> Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage.... The duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy.

*Imperial Casualty & Indemnity Co. v. High Concrete Structures, Inc.,* 858 F.2d 128, 131–32 (3d Cir.1988), quoting *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985).

Stonewall's liability to defend and to indemnify, in addition to being subject to the clauses quoted at pages 866 and 862–67, respectively, is further defined in the Stonewall policy. With respect to Stonewall's duty to defend, the Stonewall policy provides, at paragraph 8, in pertinent part, that

> [w]ith respect to any claim made, suit brought, or proceeding instituted against the Insured, ... if such claim, suit or proceeding is one which could result in liability of ... [Stonewall] to indemnify [the Debtor] hereunder for damages, [Stonewall] shall assume complete control of the investigation, negotiations, settlement and defense of any such claim, suit, or proceeding against [the Debtor].

We also note that the general coverage provision, see page 862 *supra,* embraces "all sums which the insured shall be obligated to pay by reason of the liability imposed upon him by law *or* liability assumed by him under contract or agreement" (emphasis added).

The language of the Stonewall policy indicates that Stonewall's duty to defend is *not* limited only to claims made by filing lawsuits against the Debtor, but extends to "every claim made, suit brought, or proceeding instituted" against the Debtor which may result in liability that Stonewall is required to indemnify. It should also be

noted that the Stonewall policy provides that Stonewall is required to indemnify the Debtor for both "liability imposed by law" *and* "liability assumed by [the Debtor] under contract or agreement."

Section 502(a) of the Bankruptcy Code provides that a proof of claim is deemed allowed unless an objection is filed thereto. Pursuant to B. Rule 3001(f), an allowed claim constitutes "prima facie evidence of the validity and amount of the claim." *See, e.g., In re Lewis,* 80 B.R. 39, 40 (Bankr.E. D.Pa.1987). In other words, an allowed claim is viewed as a liability of the debtor. If an objection is filed to a proof of claim, the bankruptcy court, pursuant to 11 U.S.C. § 502(b), is called upon to determine the validity and extent of the claim. The amount so determined by the bankruptcy court is deemed allowed and is a liability of the debtor. *See generally* 3 COLLIER, *supra,* ¶¶ 502.01, 502.02, at 501–1 to 501–12.

According to the Tillinghast report, there were 9,315 lawsuits pending against the Debtor at the time that it filed its Chapter 11 petition. The automatic stay imposed as of the filing date by 11 U.S.C. § 362(a) stayed not only the litigation on the suits already filed but also stayed the filing of any new or additional lawsuits against the Debtor. The asbestos claimants' only avenue to pursue their claims against the Debtor in the bankruptcy arena is by filing a proof of claim in accordance with 11 U.S.C. § 502(a). *See In re Metro Transportation Co.,* 82 B.R. 351, 353–54 (Bankr. E.D.Pa.1988) (it is difficult for unsecured tort claimants to obtain relief from the automatic stay to pursue their claims even when these claims are covered by insurance).

Again, Stonewall's citation to *UNR, supra,* is inapplicable. To repeat, the plaintiff in *UNR* was seeking contribution and indemnification from the insurer based strictly upon a tort theory. The court noted that "in a normal indemnification situation where, as here, no contractual duty to defend exists, no duty to do anything arises until the alleged indemnitee is adjudged liable." *UNR,* 92 B.R. at 328. The court

in *UNR* concluded that a civil judgment was necessary to determine the indemnitee's liability to the injured party, and that a proof of claim did not satisfy the requirement. *Id.* at 328. *UNR* is obviously inapplicable to this proceeding because this proceeding, unlike that in issue in *UNR,* involves the contractual duty of an insurer to defend and to indemnify its insured. *Compare American Motorists Insurance Co. v. Levolor Lorentzen, Inc.,* 879 F.2d 1165, 1166–69 (3d Cir.1989) (immediate appeal not allowed from interlocutory district court order holding that "claims" asserted by the federal Environmental Protection Agency against the insured were the equivalent of a suit pending against the insured, rendering the insurer liable to defend such "claims" under an indemnity policy). It must also be recalled that ambiguities in insurance policies are construed against insurers and in favor of coverage. *See* page 866 and cases cited therein *supra.*

On the basis of the above discussion and case law, it is not difficult to conclude that Stonewall's liability to defend is triggered by filings of proofs of claims by asbestos claimants. A proof of claim is a "claim" which may subject the Debtor to liability. The other insurers, American, Aetna, Interstate, and Bellefonte, have at least tentatively reached settlements with the Debtor to "cash out" their policies, leaving the Stonewall policy as the only insurance policy remaining in place. The Tillinghast report estimated that the present and future claims against the Debtor were well in excess of the primary insurance coverage of the Debtor. *See Amatex I,* 97 B.R. at 222. The evidence in the record concerning the case study performed by the Debtor's witnesses, *see* page 861 *supra,* confirms this conclusion. Therefore, there is little doubt that the presence of proofs of claims on file in this court results in liability of Stonewall to the Debtor under the policy in issue. Such being the case, Stonewall has a duty to defend the proofs of claims unless it can prove that a particular claim is outside of the coverage of its policy.

■ Not only does Stonewall have a duty to defend the proofs of claim filed in the Debtor's bankruptcy and to indemnify

the Debtor for all liability thereunder for which the Debtor is responsible, but also it owes a fiduciary duty to the Debtor with respect to the consideration of settlement offers and the conduct of settlement negotiations. *See AC & S I, supra,* 666 F.2d at 823; and *ACF Produce, Inc. v. Chubb–Pacific Indemnity Group,* 451 F.Supp. 1095 (E.D.Pa.1978). *Cf. Larraburu Brothers, Inc. v. Royal Indemnity Co.,* 604 F.2d 1208, 1210 (9th Cir.1979) (construing California law); and *Baton v. Transamerica Insurance Co.,* 584 F.2d 907, 911–12 (9th Cir.1978) (construing Oregon law).

We acknowledge that Stonewall's duty to indemnify and its duty to defend are separate and distinct considerations. *American Motorists, supra,* 879 F.2d at 1169–70. And, as we stated in *Amatex I,* 97 B.R. at 225–26, this court does not have the power to require that Stonewall cash out the coverage under its policy contrary to the terms of that policy. Stonewall must only indemnify the Debtor in accordance with the terms of its policy. The terms of the Stonewall policy require the Debtor to look to other insurers for coverage ahead of Stonewall. The Debtor must look to those sources before looking to Stonewall for indemnity.

However, with respect to Stonewall's duty to defend, as stated above, if a claim is filed against the Debtor which *may* impose liability on Stonewall, Stonewall must defend that claim in accordance with its policy. Since the proofs of claim filed in the Debtor's bankruptcy *may* subject Stonewall to liability, Stonewall is obligated to defend those claims and, in accordance with its fiduciary duty, participate in any settlement negotiations related thereto.[6]

## H.  THE POLICY'S RETAINED LIMIT AND SELF–INSURED RETENTION OF $25,000 LIMITS MERELY REDUCED STONEWALL'S LIABILITY IN THAT AMOUNT

▇ The Stonewall policy provides for a "self-insured retention" of $25,000. Under the Stonewall policy, Stonewall is only liable in excess of either

(i) the applicable limits of liability of the policies of underlying insurance set forth in item 3 of the schedule; or

(ii) as respects an occurrence not covered by such underlying insurance, but covered under this policy; or where an occurrence is covered by such underlying insurance but in recoverable amounts less than the self insured retention set forth in item 4 of the schedule, the amount of the ultimate net loss set forth in item 4 of the schedule as "self insured retention."

Count 6 of the Debtor's Complaint requests that we require the insurers to pay to the Debtor the entire amount of the maximum limit of their policies and then be relegated to an unsecured claim against the Debtor for the amount of the "self-insured retention." The Debtor discussed this issue only briefly in its original Brief in opposition to the Defendants' motion to dismiss and neither it nor Stonewall addresses this issue in any of the Briefs filed in this adversary proceeding thereafter.

The Debtor presented no evidence to support its contention that the self-insured retention is not a limit on liability but, rather, may be asserted only as an unsecured claim against the estate. Therefore, it cannot prevail because it failed to meet its burden of proof. Nevertheless, the issue was presented and we will briefly address it without assistance from the parties. We also note that we have located no applicable caselaw to provide us assistance in resolving this issue.

"Self-insurance" has been defined as

[t]he, practice of setting aside a fund to meet losses instead of insuring against such through insurance. A common practice of business is to self-insure up to a certain amount, and then to cover any excess with insurance.

---

**6.** However, we also note that the "ultimate net loss," see pages 866–67 *supra,* is the sum of all claims paid and amounts expended on defense of claims. As these obligations will clearly exceed the $1 million maximum coverage under the policy, the issue of whether Stonewall would be liable to contribute to the planned alternative claims resolution system if its coverage was not otherwise exhausted appears moot.

BLACK'S LAW DICTIONARY 1220 (5th Ed.1979). Self insurance is best compared to the familiar "deductible" amount referenced in most insurance policies. It is common knowledge to anyone who has ever filed an insurance claim subject to same that the deductible must be exhausted before the liability of the insurer begins.

Giving this meaning to the term "self-insurance" and noting that the $25,000 in question is referred to as the amount of "self-insured retention" in the Stonewall policy several times in the text of that policy, it is clear to this court that Stonewall is liable only for those amounts in excess of the self-insured retention. The self-insured retention is therefore not an amount that is owed by the Debtor to Stonewall but, rather, represents the threshold of Stonewall's liability to the Debtor. We therefore declare that the self-insured retention amount set forth in the Stonewall policy is a limitation on Stonewall's liability under the policy.

In its Complaint, the Debtor asked for a declaratory judgment that it is not an insurer or self-insured for the purposes of the provision in the Stonewall policy requiring the Debtor to look to other applicable insurance policies before seeking indemnification from Stonewall. Stonewall denied this contention in its answer.

Having already determined that the Debtor must exhaust its self-insured retention limit and must seek indemnification from its primary insurance policies before looking to Stonewall for indemnification, it is not clear, in addition to this, what the parties are seeking. The Debtor, however, has failed to produce any evidence or offer any testimony to support its position and, therefore, because the Debtor failed to meet its burden of proof, this court will not make the declaration sought by the Debtor. This, of course, does not prevent the Debtor from raising this issue again in the appropriate situation.

I. CONCLUSION

We will proceed to enter an Order directing that this Report and Recommendations be transmitted to the district court with a proposed Order which would determine this proceeding consistently with the conclusions set forth herein.