**Thomas A. KLEBAN, Appellant,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 30, 2001.

Filed March 27, 2001.

Delano M. Lantz, Harrisburg, for appellant.

Walter F. Kawalec, III, Philadelphia, for appellee.

Before POPOVICH, JOYCE and BROSKY, JJ.

JOYCE, J.:

¶ 1 Thomas Kleban, Appellant, appeals from the order dated July 7, 2000 wherein the trial court entered summary judgment in favor of National Union Fire Insurance Company, Appellee. We affirm. Before reviewing the merits of the case, a recitation of the factual and procedural history is in order.

¶ 2 This case has its genesis in an accident that occurred on July 2, 1989, when Appellant dove into a pool, severing his spine and rendering him a quadriplegic. Appellant brought suit on September 20, 1990 in the Superior Court of New Jersey. Appellant named the pool manufacturer ("Heldor") and the pool owner, Prudence Simonds as defendants in his complaint. At the time of the accident, Appellee insured Heldor under a policy that provided general liability coverage. The insurance policy contained a self-insured retention clause that provided that Heldor was responsible for the first $250,000.00 per occurrence and Appellee was responsible for the remainder of a judgment or settlement up to the policy limits of two million dollars.

¶ 3 On December 7, 1990, Heldor filed for bankruptcy and an automatic stay was issued pursuant to the Bankruptcy Code. Appellant filed for relief from the automatic stay in order to pursue his negligence action. The parties stipulated to an order of the bankruptcy court lifting the stay.

¶ 4 Appellant settled his case against Prudence Simonds and proceeded to a jury trial against Heldor. A verdict was returned on July 29, 1994 in favor of Appellant in the amount of $8,780,000.00. Heldor was found to be 10% responsible, thus its liability was $878,000.00.

¶ 5 Appellee paid all of the judgment in favor of Appellant and against Heldor in excess of $250,000.00, the self-insurance retention. Five years later, on March 1, 1999, Appellant instituted the current action by filing a complaint against Appellee contending that Appellee is responsible for the $250,000.00 that it withheld. Appellee filed an answer and new matter to the complaint. Appellant responded with a reply to new matter. On March 2, 2000, Appellee filed a motion for summary judgment. On April 3, 2000, Appellant filed an answer to the motion for summary judgment and also a cross-motion for summary judgment and motion to compel the production of documents. Following oral argument, the trial court granted Appellee's motion for summary judgment and denied both the cross-motion for summary judgment and the motion to compel the production of documents by order dated July 7, 2000. This timely appeal followed.

¶ 6 Appellant presents the following issues for our consideration:

A. Where an Insuring Agreement contains a self-insured clause that includes both defense costs and indemnity within the retention, the insured goes bankrupt and the insurer chooses to vigorously defend and pay defense costs in excess of the retention, and the tort victim gets a judgment below the policy limits, do the defense costs reduce the self-insured retention (the insurer having a pre-petition claim against the insured in the bankruptcy) so that the tort victim creditor has a claim against the insurer under the indemnity provisions for the full amount of the judgment since the self-

insured retention was satisfied by the defense costs incurred in defending against the claim?

B. Assuming the insurer was otherwise obligated to make the payment, did the stipulated Bankruptcy Court Order granting relief from the automatic stay clearly and unambiguously relieve the insurer of the obligation where the order stated that, "to the extent the amount of any judgment ... is not payable from available insurance proceeds, including, specifically, to the extent the amount of any award or settlement falls within the self-insured retention or exceeds the upper limits of insurance coverage, movant [Appellant] expressly reserves his right to assert a claim against the debtor or its estate for any such amount..."?

C. Under the facts in (A) and (B), where some defense costs were incurred by the insured before it filed bankruptcy, is the insurer entitled to summary judgment before full discovery is completed regarding the defense costs incurred and without hearing evidence of the intent of the parties under the stipulated order?

Appellant's Brief, at 4.

¶ 7 In reviewing a trial court's grant of summary judgment, our scope of review is plenary and our standard is as follows:

In reviewing the grant of summary judgment, we look to whether the trial court committed an error of law. Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. The moving party has the burden of proving the nonexistence of any genuine issues of material fact. The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entry of summary judgment is proper where the incontraverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

*Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa.Super.2000), *citing Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650–51 (Pa.Super.1999).

¶ 8 Appellant brought this action pursuant to the Direct Action Statute, 40 P.S. § 117, which states in pertinent part:

[T]he insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained ... [if] execution against the insured is returned unsatisfied in an action brought by the injured person ... because of such insolvency or bankruptcy, then an action may be maintained by the injured person, ... against such [insurer], **under the terms of the policy**, for the amount of the judgement in the said action, not exceeding the amount of the policy.

40 P.S. § 117. (Emphasis added). Since the Direct Action Statute directs that an action may only be maintained against the insurer to the degree that it complies with the terms of the policy, an evaluation of the policy is in order.

¶ 9 The insurance policy between Appellee and Heldor contains the following "Endorsement # 3", titled, "Self Insured Retention." In pertinent part it states:

1. In consideration of the premium charged it is agreed that the limits of insurance for each of the coverages pro-

vided by this policy will apply excess of a $250,000.00 self-insured retention (hereinafter referred to as the "Retention amount").

. . .

Your bankruptcy, insolvency or inability to pay the retention amount shall not increase our obligation under this policy.

. . .

4. We shall have the right but not the duty to participate with you at our own expense in the defense or settlement of any claim or suit seeking damages covered under this policy. In the event of a claim or suit which in our reasonable judgement may result in payments, including supplementary payments, in an amount in excess of the retention amount we may assume control of the defense or settlement of such claim or suit. You will continue to be responsible for the payment of the retention amount.
5. In the event there is any other insurance, whether or not collectible, applicable to an "occurrence", claim or suit within the retention amount, you will continue to be responsible for the full retention amount before the limits of insurance under this policy apply.

National Union Fire Insurance Policy, GL–590–18–20, issued to Heldor.

¶ 10 Although we have been unable to find any Pennsylvania state law on point in this matter, Appellee cites to federal caselaw to support its position. While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason. *Chester Carriers, Inc. v. National Union Fire Insurance Company of Pittsburgh,* 2001 WL 21308, at 5 (2001) *citing, Willard v. Interpool,* 758 A.2d 684 (Pa.Super.2000). In *In re Amatex Corp.,* 107 B.R. 856, 871–872 (Bankr.E.D.Pa.1989), the court addressed the issue of whether a self-insured retention required an insurer to pay a debtor the entire amount of the maximum limit of their policy and then be relegated to an unsecured claim against the debtor for the amount of the self-insured retention.[1] The court described self-insurance as "the practice of setting aside a fund to meet the losses instead of insuring against such through insurance. A common practice of business is to self-insure up to a certain amount, and then to cover any excess with insurance." *Id.,* at 871–872, *quoting, Black's Law Dictionary,* 1220 (5th Ed.1979). "Self insurance is best compared to the familiar "deductible" amount referenced in most insurance policies. It is common knowledge to anyone who has ever filed an insurance claim subject to same that the deductible must be exhausted before the liability of the insurer begins." *Id.* In resolving the issue, the court held "[t]he Insurer is liable only for those amounts in excess of the self-insured retention. The self-insured retention is therefore not an amount that is owed by the insured to [the insurer] but, rather, represents the threshold of [the insurer's] liability to the [insured]." *Id.* at 872. We find this common sense approach to a self-insured retention logical and applicable to the facts before us. Now we turn to the specific language of the policy.

¶ 11 "When interpreting an insurance contract, we must consider the parties' intent as manifested by the clear

---

1. Appellant's argument nearly mirrors this issue. Appellant contends "since the defense costs in excess of $316,000 necessarily satisfied the self-insured retention of $250,000.00 [and are] pre-petitions obligations in a bankruptcy proceeding, and since [Appellee] has the status of a general unsecured creditor for those costs, the payment of such defense costs logically satisfied the self insured retention." Appellant's brief, at 15.

language of the instrument. When that language is clear, we apply its terms as written." *Chester Carriers, Inc., supra,* at 3, *citing, Nationwide Insurance v. Horace Mann Insurance, Co.,* 759 A.2d 9, 11 (Pa.Super.2000). Clearly, the language of the insurance policy holds Heldor responsible for the first $250,000.00 of any claim filed. The language is clear and unambiguous that this is so. Nonetheless, Appellant argues that because Appellee paid the costs of defending the suit against Heldor, which exceeded the self-insured retention amount, that the self-insured retention was satisfied and Appellee is required to pay the full judgment. We do not agree with Appellant's assertion. Paragraph four of the insurance policy endorsement, *supra,* expressly states that the costs in defending or settling a claim or suit seeking damages which are covered under this policy do not absolve Heldor from being responsible for the payment of the retention amount. Furthermore, to accept Appellant's argument would result in Appellee's payment of the self-insured retention, an element clearly not contemplated by the insurance policy.

¶ 12 Appellee further counters Appellant's arguments by referring to the stipulated order entered by the bankruptcy court that lifted the automatic stay and allowed Appellant to proceed against Heldor. Appellee maintains that a condition of modifying the automatic stay to allow Appellant to liquidate his claim required Appellant to proceed in the bankruptcy court for the amount of the self-insured retention. As such, a review of the bankruptcy court's order is appropriate. It reads:

> This matter having been opened to the court upon the Motion of Thomas Kleban... seeking an order vacating the automatic stay in order to permit (a) liquidation of Kleban's alleged personal injury claim against the Debtor and (b) satisfaction of said liquidated claim from the proceeds of the Debtor's applicable policies of insurance; and there being no evidence at this time of any additional claimants asserting similar claims against the Debtor arising during the same policy year as that governing Kleban's accident; **and it appearing that there exists insurance coverage with regard to Movant's claim with $250,000 of self-insured retention;** and it appearing that the Debtor, the Official Committee of Unsecured Creditors, the Debtor's insurance, American International Group ("AIG"), and the Movant (sic) consent to the entry of an order lifting the automatic stay upon the terms specified in this Order, it is on this 8th day of April, 1991 ordered that:

> 1. The automatic stay of Section 362(a) of the Bankruptcy Code shall be and is hereby modified to permit Movant, Thomas A. Kleban, to liquidate by judgment, settlement, or otherwise, his alleged claim against the Debtor asserted in the matter of Thomas A. Kleban v. Heldor Industries, inc., et al., . . .

> 3. To the extent the amount of any judgment or award obtained in the state court Action is not payable from the available insurance proceeds including, **specifically, to the extent the amount of any award or settlement falls within the self-insured retention or exceeds the upper limit of insurance coverage, Movant expressly reserves his right to assert a claim against the Debtor or its estate for any such amounts, pursuant to the proof of claim which Movant has previously filed with the Bankruptcy Court.**

Order of United States Bankruptcy Court, 4/8/91. (Emphasis added).

¶ 13 The bankruptcy court order is only further evidence of the clear and unambiguous terms to which these parties agreed.[2] Both the policy and the bankruptcy court order, which bind Appellant, the first by statute and the latter by stipulation, state that Heldor is responsible for the self-insured retention amount and that to the extent that settlement falls within this amount, Appellant must proceed against Heldor, the responsible party. Therefore, in viewing the record in the light most favorable to the moving party, we agree with the trial court that no genuine issues of material fact exists and Appellee is entitled to judgment as a matter of law. Accordingly, Appellant's last issue, that the trial court erred when is entered summary judgment prior to complete discovery regarding the defense costs incurred and without hearing evidence of the intent of the parties regarding the stipulated order is also without merit. Finding no basis upon which to grant Appellant relief, we affirm the order of the trial court.

¶ 14 Order affirmed.

2. Appellant submitted the affidavit of Attorney Delano Lantz, who represented Appellant in the drafting of the bankruptcy court order. In that affidavit, Attorney Lantz indicates that he knew the costs of the defense were to be paid by Heldor and would be credited against the self-insured retention but at that time, the defense costs had not reached $250,000. Thus, he maintains that it was never his intent that appellant agree to be limited in his recovery of the $250,000 through bankruptcy proceedings against Heldor. Although we do not doubt the accuracy of Attorney Lantz' beliefs, they are simply not supported by the clear language of the order and another affidavit submitted by one Jonathan Rudd. In his affidavit, Mr. Rudd attests that he had knowledge that Appellee had paid the $316,000 in defense costs, as opposed to Heldor paying any portion of it as stated by Appellant.